

|  |  |
|---|---|
| A. Schaefer, Mary R., ) | United States District Court |
| Plaintiff ) | Northern District of Illinois |
| ) | RECEIVED |
| v. ) | MAY 30 2008 |
| ) | MICHAEL W. DOBBINS |
| B. Sr. Mother Angelica ) | CLERK, U.S. DISTRICT COURT |
| (Rita Rizzo), P.C.P.A., ) | 08CV3140 |
| Defendant ) | JUDGE GOTTSCHALL |
|  | MAG. JUDGE VALDEZ |

## COMPLAINT

1.) Plaintiff, Mary R. Schaefer, formerly a member of the Poor Clares of Perpetual Adoration (P.C.P.A.), 1990-1995, a religious catholic order located during the time of membership at Our Lady of the Angels Monastery, 5817 Old Leeds Road, Irondale, Alabama, 35210, does hereby file a complaint against the defendant, Sr. Mother Angelica Rizzo, who resides at 3222 County Road 548, Hanceville, Alabama, 35077, and who is commonly associated with Eternal Word Television Network of Irondale, AL, as "Mother Angelica," founder, and officer of same, previously or currently as President, and the Plaintiff does not know whether the Eternal Word Television Network operates as a civil or church enterprise, but is aware that profits from the Eternal Word Television Network, i.e., sales of nuns items or gift shop items, provide "income" to the Defendant and to the Poor Clares of Perpetual Adoration, of which she considers herself to be some kind of Abbess. The Plaintiff left the religious community a member in good standing, with references to specific convents to visit to transfer vows or re-join another community, at the direction of both the Defendant and Sr. Raphael, both whom were decidedly sure that the Plaintiff has a "religious" vocation; that, given all her talents and good work and prayer life, the Defendant had decided, perhaps given the many changes in the religious community and the certainty that the Plaintiff could not "fit" into the

religious community's viewpoints and vision for EWTN, that she should consider a different religious community.

    2.) The complaint is filed for false light or torte in the specific instances as follows, including use of intellectual property and use of professional identity; brand-casting; profits obtained and accumulated for many years for same; use of intellectual property for promotion of EWTN, a television station whose viewpoints the Plaintiff does not support; and indirectly for "income" for the Poor Clares of Perpetual Adoration, an order of which the Defendant is not only a member but of which the Defendant identifies herself as a foundress of some kind; and other tortes as will be described, but specifically here, in regards to:

a.) a "nuns" gift shop sale of pin *specifically identified* with the Plaintiff's intellectual property and broadcast from an airing of a television program that included the Plaintiff around 1994 and of which the Plaintiff is identified with a slogan now so prevalently used by the Defendant for herself or to herself noted as "I Believe." The uniqueness of the slogan related to the Plaintiff's use of her personal property; b.) obtaining of profits and appropriation of profits to the P.C.P.A. of the sale of the same pin identified with the Plaintiff's testimony, personal to her, without any permission granted for such use of the Plaintiff's intellectual property for such sale, promotion, and distribution; and without any provision of profits to former religious member identified with same "Eucharistic, I believe" pin; c.) use of same testimony for promotional purposes of viewpoints of which the Plaintiff does not espouse in any manner; d.) use of same testimony for promotion of television station, its identity, and its viewpoints; e.) for encouraging any associate of the P.C.P.A., either juridically associated or by contact and identification with the Defendant, to do the same, such as through sale of pin or identification with the Plaintiff's slogan and the Defendant's use of same to further the Defendant's ventures, including any gift shop, peace center, or prayer group or any kind associated with the Defendant and Medugorje activities, or any other apostolate(s) of any kind, including specifically a medugorje/marian gift shop formerly located in the plaza at Foster and Harlem operated as a "marketplace" and run by a Kathleen Long of Chicago, who is further associated with a medugorje in Bosnia; Susan Tassone of a Holy Souls Apostolate, Guy Murphy of an Angels of the Last Time, all of whom are directly involved

with EWTN, P.C.P.A., Shrines, Temple, or other, such as DuPage Marian Center, pilgrimages, and Medugorje; f.) and for sale of videotapes or other media forms of reproductions of same aired television program, sold through newsletters, commercials, or other, for profits and promotion, and with same lack of permission or provision of profits to former religious member, Plaintiff. The Defendant seems to believe she holds some type of authority the Plaintiff considers completely false and even illegal, in regards to her appropriating the Plaintiff's intellectual property to herself and or ventures or associates, and even appropriation of the Plaintiff's self, if it can be so said, to same. Such false authority the Plaintiff finds has been extremely harmful to her life, including invasion of privacy by the Defendant with whom the Plaintiff never has any contact or association whatsoever. The matter becomes serious insofar as the associates and orders and network of the Defendant do not recognize the civil and religious rights of the Plaintiff in this matter whatsoever in regards to the Defendant's false authority.

3.) In addition, the Plaintiff is filing this complaint for additional false lights that include the use and appropriation of her religious name as Sr. Sarah Marie of the Merciful Redeemer, her religious identity, even her religious life experience, as well as her professional experiences, with the Defendant seemingly granting permission for such tortes, including, specifically: a) appropriation of her religious name and title to the Poor Clares of Perpetual Adoration, the Missionaries of the Eternal Word (listed as mfva . info, 5821 Old Leeds Road, Irondale, Alabama, 35210), the Eternal Word Television Network, and other associates; b.) appropriation of prayers said daily by Plaintiff during time of membership, specifically the Stations of the Cross, as the Defendant knows full well this prayer was said daily by the Plaintiff during the time of her membership while not required by the religious constitutions; c.) use and appropriation of professional experiences and identity, including her identity as an Editor and freelance writer, proofreader, educator, and trainer, including even her own life experiences, grammar school, high school, and university education completed or begun; d.) insofar as this identity was appropriated and permission granted by the Defendant to Susan Tassone, and as Susan Tassone is not Sr. Sarah Marie of the Merciful Redeemer, the Plaintiff finds the damages become greater. Susan Tassone (listed as holysouls . info, Mission Office, 721 N. LaSalle, Chicago, IL) published a pamphlet of the Stations of the Cross

and gave herself a title as Editor and published same pamphlet or book through Pauline Media, perhaps in association with a Fr. Augustine of the Missionaries of the Eternal Word. The Plaintiff does not in any way whatsoever support this apostolate or anything related to a certain "Joe" who have some type of supernatural experience in a cemetery in Hillside, IL; nor does the Plaintiff support any such prayer group related to these events, nor does she support any such prayers for the holy souls in guise of Eucharistic Adoration, the Stations of the Cross; insofar as Susan Tassone and Guy Murphy obviously are joined with both EWTN and Defendant along with Medugorje, the Plaintiff clearly recognizes and states that she holds no involvement whatsoever with these events having found them even harmful, for many years already; without any association whatsoever with any prayer group, the Plaintiff kindly spent 6 months assisting orphaned children in Bosnia; at present, the Plaintiff identifies these events as alarmingly and seriously unapproved by the Church and does not continue any further such helpful contact whatsoever, having found these acquaintances having serious concerns of which the Plaintiff cannot be concerned, including certain messages that they spread; e.) appropriation and use of a specific charism written by the Plaintiff which belongs solely to the Plaintiff; with titles such as "On the Contemplative Life," "On the Missionary Life," "The Garment of the Saints," and. Especially, a series of letters the Plaintiff wrote on specific studies; by the Defendant, who falsely seems to have granted permission to use to the Poor Clares of Perpetual Adoration, the Eternal Word Television Network, and the Missionaries of the Eternal Word (as well as a certain Fr. Augustine, member of same);  f.) and appropriation of same charism to associate Guy Murphy of an Angels of the Last Times in Chicago, perhaps Hillside, IL, who takes or has taken retreats or pilgrimages to Irondale, AL as was and perhaps still is advertised in the <u>Medugorje Magazine</u> of a DuPage Marian Center.

    4.) This complaint refers to any media form of a commercial, advertisement, or promotion, or sale of item, that includes the Plaintiff or her intellectual property, and includes any airing of previously taped television Masses that include the Plaintiff for purposes of promotion of EWTN, an audiotape or perhaps a CD currently of music of the nun's singing that includes the Plaintiff, with a specific title of a song nearly identified with the Plaintiff's title no longer allowed to be used, "Merciful Redeemer," as

a torte. The Plaintiff's identity is appropriated, moreover, in a way in which the Plaintiff is not in agreement as the Plaintiff neither supports nor espouses the viewpoints or associations of EWTN specifically in relation to certain unapproved events indirectly or directly identified, and especially in view of the activities of EWTN to the Plaintiff and to others, and also in terms of profits not provided to the Plaintiff for same tortes. Not only for such profits as has never been provided to the Plaintiff is this complaint being filed, but insofar as the personal identity of the Plaintiff has been used or appropriated for profits, including, as stated, to promote a specific identity and point of view to which the Plaintiff does not subscribe, is this complaint of necessity being filed as well as for the damages sustained since the time of membership of the Plaintiff. The Defendant refuses to desist from these tortes and other concerns identified in this complaint. In 1995, at the time of the end of her membership as a P.C.P.A., the Plaintiff kindly advised the Defendant to please attempt to observe canon law of the Catholic Church as it relates specifically to religious and consecrated life members of whom the Defendant is not in control. When the tortes and damages became quite serious, again, in 2003, the Plaintiff requested the Defendant desist. A most recent letter sent, with copies to the Office for Religious in the Archdiocese of Chicago and a member of the Diocese of Birmingham's office, once again defined for the Defendant her lack of any association whatsoever with the Defendant and requested the Defendant desist from her serious violations against the Plaintiff. The Defendant has not rectified any of these matters so addressed in that letter. A copy of the letter is attached (Exhibit A). The Plaintiff identifies a false authority on the part of the Defendant that has no civil or religious validity whatsoever and finds the Defendant's need to control or to violate the Plaintiff's liberties very serious. At times the Plaintiff wonders if the Defendant has any awareness of the realities of a person's life whatsoever, when such disregard for a human being can be rendered so easily by the Defendant. The Defendant is not the Superior or Abbess of the Plaintiff.

  5.) In all, *any* written work of the Plaintiff - letters, papers, charism writings, religious education writings, educational writings, editorial and copywriting work, constitutions proofread and typed, any newsletters or newspapers, M.A. thesis, work

done for any employer or educational establishment of any kind, any intellectual property whatsoever in any written form specifically - is included in this complaint.

6.) This is all extremely and seriously exacerbated and escalated by the serious concerns of the Plaintiff in terms of invasion of privacy and slander and especially to a specific slander and calumny classified as Anti-Semitism by the Plaintiff leveled by Sr. Mother Angelica (Rita) Rizzo and Sr. Margaret Mary.  On many occasions they have uttered such words or phrases in a hateful and domineering way, "a Jew," and still seem to hold to such slander, perhaps even on broadcasts in the form of innuendo or slur, and perhaps even against the Plaintiff's family.  The defamation of character by the Defendant proves to be not only a false use of media privileges to protect their own interests, but is extremely irreligious and extremely unethical.  The Defendant does not ever seem to consider the seriousness of such forms of racism.  The Plaintiff's rights, freedom of speech and her right to defend against such slander and calumny are violated and damages have occurred.

7.) This complaint includes the Plaintiff's real concern that the Defendant and associates have an intent to not only harass, intimidate, threaten, and coerce, but to harm the Plaintiff.  The complaint includes, then, invasion of privacy and infliction of stress and damages and losses for same.  The Plaintiff finds it necessary to cite in this complaint any Medugorje associate, center, prayer group, or gift shop, either in the United States or abroad, wherein Medugorje is a "village" located in Bosnia, near the border of Croatia.  The people who reside in this village seemingly desire to promote message and to spread these.  These messages are supposedly of a supernatural origin with the leader of Medugorje being a certain Fr. Jozo Zovko, O.F.M., and previous pastor in the area, Fr. Pervan.  That the message seem in some ways to have a high warning content that includes references to war and chastisements, famines and earthquakes, and that these same are often known to be associated with Arabic or Moslem faith throughout centuries, the Plaintiff finds alarming insofar as these are spread by such centers in the United States.

8.) This complaint includes Medugorje, then, insofar as Medugorje seems to be identified with EWTN and the Defendant, the P.C.P.A. in Alabama, the M.E.W.s, and other associates; the Plaintiff, not being associated nor attending in any form of membership whatsoever any type of prayer group, either previously, recently, or currently associated with Medugorje, identifies that the Catholic Church in no way requires such association with these events in order to be a member of the Catholic Church; that any type of force or manipulation to support the viewpoints or beliefs of these associated in anyway with the Defendant or Medugorje is a violation of the Plaintiff's civil rights. That the Defendant seems to hold a false authority requires the Plaintiff to address the use of false authority for invasion of privacy by the Defendant and any associate or alleged prayer group. No permission by the Defendant can be given for any use of the Plaintiff's identity or intellectual property to Medugorje or a certain Fr. Jozo Zovko, O.F.M., for some agreement made between Sr. Angelica Rizzo and him prior to the Plaintiff's departure from Our Lady of the Angels Monastery, especially regarding any private or sensical conversation they may have had regarding the Plaintiff's person or life, self or and especially her educational background: a M.A. in Communications and resulting media knowledge. The Plaintiff does not own or operate a television station, but is in no way associated with EWTN, the Defendant's television station, given especially the Plaintiff's concern that these centers and EWTN, who at times seem to disagree with one another, actually often agree and matters of most serious concerns regarding the safety of the United States cause the Plaintiff to file this complaint. The use of the media to force of will of others the Plaintiff holds is illegal and any such use or torte of the Plaintiff's own identity or life or family the Plaintiff holds is akin to serious criminal activity. Such agreements or permissions are not granted by the Plaintiff, either for use of her Masters Degree in Communications or of her religious identity or other intellectual property. Invasion of Privacy and infliction of emotional stress has occurred even in the environs of the Plaintiff's own home or apartment throughout the years by associates of both, the Defendant, EWTN, etc., and Medugorje. The Plaintiff has not been a member of any prayer group or center nor participated in these for many years, although in 2003 these portrayed a semblance of helpfulness such that as recognizing some interference on the part of the Defendant once again interfering in the Plaintiff's life and employment and even the Plaintiff's family. This

help and assistance proved false, also, such that the Plaintiff is further and completely distanced from both Medugorje and EWTN.

9.) The court has Jurisdiction over this case as the Defendant is not so willing to rectify the matter after correspondence with the most recent sent in 2007. (See Exhibit A).

10.) The Plaintiff Mary R. Schaefer requests of the court to not only administer the complaint and court proceedings, but requests of the court any protection deemed necessary to herself and her family in regards to the concerns addressed in the complaint and given the identity of the Defendant as a television figure with various associates, if the court deems so as necessary. The Plaintiff requests of the court to ascertain whether or not the Defendant understands and is willing to observe that neither by law, nor by any approved Constitutions of the Catholic Church, nor by the Roman Catholic Church herself, is the Plaintiff required to support the views or even view EWTN, a television station, or observe any directives of the Defendant as either a member or Superior or Abbess of a religious community of which the Plaintiff is not a member or as a figure of EWTN. The Plaintiff requests of the court to request of the Defendant actual figures and monetary amounts gained and estimated gains for sale of the items listed and commercial use of identity and slogan for the success of EWTN. The Plaintiff requests of the court to request of the Defendant to accept that the Defendant, as such a figure, having no civil or canonical authority over the Plaintiff whatsoever, is not allowed to control, act as a Superior or Abbess, grant any permissions regarding her self or identity to others to use, torte, or invade the privacy of the Plaintiff, Mary R. Schaefer, formerly a member of the Poor Clares of Perpetual Adoration. That the Roman Catholic Church does not require in any way that the Plaintiff be associated with the Poor Clares of Perpetual Adoration in Alabama is obvious. Nor does the Catholic Church require of the Plaintiff to consider the viewpoints or activities of either EWTN or "Medugorje" in order to be a member of that Church, at all, or in any way; that the Defendant's not recognizing that the Plaintiff is not under any "authority" or control or even manipulation by the Defendant, legal violations have occurred and must stop immediately. The Plaintiff further requests of the court to request of the Defendant a

proper amount from the Defendant for all damages and even those indirectly sustained by permissions granted to associates, the P.C.P.A., the M.E.W.s, and EWTN, or any Medugorje "center" or "group" (tour group or prayer group). The Plaintiff asserts that there is a fear, aggression, and even a somewhat lawless fanaticism that is prevalent in followers of the Defendant that results in attempts to psychologically control the Plaintiff and perhaps other members of society, for their viewpoints, that seem to include such irrationalities that "chastisements" might be coming; and the Plaintiff holds these viewpoints are not supported by the Plaintiff, overall. The damages and losses as have been identified in this complaint include torte, use of intellectual property, granting of false permissions with false authority, attempts to control or to harm, infliction of emotional stress, lack of provision of any credit or income for any torte or use of intellectual property or other identity of self of Plaintiff, brand-casting, defamation of character, Anti-Semitism, racism of any kind, slander, and calumny. Other personal damages sustained include personal losses in employment, losses resulting from invasion of privacy over the year since the time the Plaintiff left the P.C.P.A. and her religious vows ended or were not renewed. Invastion of privacy occurs when the Defendant requests of associates to "keep an eye" on the Plaintiff (the Plaintiff has witnessed this type of behavior on the part of the Defendant many times), and other, and over the past 12 years, becoming more serious in the year 2003, requiring of the Plaintiff specific, personal counsel and pastoral care. The Plaintiff cites that even elements of force have been leveled against her by the associates of the Defendant that, in a way, are quite serious and harmful to the Plaintiff's person and life as well as for the serious torte violations and Anti-Semitism. The amount the Plaintiff requests of the court to request of the Defendant, and the court may ascertain the identity of the owner and operator and the various accounts of EWTN, $350,000.00, an amount that does not rectify the damages for which the Plaintiff is filing this complaint, and indirectly includes serious losses for her family, possibly even resulting in death and injuries. In addition, the Plaintiff requests of the court to remove the ability of the Defendant to use her identity, and requests the court to obtain discontinuance of any sale of any items, pin or media, slogan or self identity, that includes or is the intellectual property or a result of the intellectual property of the Plaintiff; and to discontinue the broadcasting of any commercial that still may include the Plaintiff, including the nun's singing tape.

12.) Lastly, the Plaintiff considers the activities of the Defendant so serious as it could be possible the case could be considered to possibly be able to become class action. The Plaintiff does not know whether any former members of the P.C.P.A., the M.E.W., or EWTN are willing to state any complaints or even concerns. The Plaintiff has witnessed similar treatment before. When a violation of canon law occurs, such as is possible when the Superior asserts an authority that is not part of the Constitutions over members of the religious community, including privately requesting of different members to find a different religious community "after," and the Plaintiff emphasizes this, after religious vows have been made, the irregularities should be addressed. The Plaintiff who lived with the Defendant for over 4 years states this with reference to control concerns. The Plaintiff is seriously concerned about the association of EWTN, etc., with Medugorje, a not-approved Catholic supernatural in Bosnia or a Croatian Catholic Church village, where Arabic or Turkish or some kind of Catholic (and Muslim) identity operate messages and tour groups in and out of various countries including the United States, seemingly without any reference whatsoever to the Catholic Church in many ways. The Plaintiff is not against observant Moslems. The Defendant's personality, at times, the Plaintiff seems unable to let go of control of the Plaintiff or others. The Plaintiff finds a form of psychological control occurs leveled with accusations and threats and aggression and various labels, such as "liberal," "liberal priest" or "liberal sister," "heretic," and none of these Church members or other civil members are under any authority or jurisdiction of the Defendant; meanwhile, it is easy enough for the Defendant to approve and support events that the Catholic Church herself has not approved and, at times, in the name of the Catholic Church. The amount of Anti-Semitism the Plaintiff finds serious, as well. The Plaintiff finds over the years of her membership that it is impossible to disagree with the Defendant on even the smallest, most insignificant point, without such irrational responses. However, at this time the Plaintiff finds it necessary to file this complaint, also because the Defendant does not desist in her interference and use of intellectual property and invasion of privacy of the Plaintiff. This is not the first time the Defendant has attempted to control the Plaintiff's life. However, this time the Defendant has gone too far in attempting to, if it can be said, coerce the Plaintiff into agreeing with her viewpoints. That the Defendant

would like the Plaintiff to live like some kind of Mother Teresa, on the streets, if she refuses to do the Defendant's will, the Plaintiff finds quite serious at this point time, like some kind of escalation that has gone to far and with this idea that the Defendant is some being or Angel travelling around the globe on Television, an Angel of the Book of Revelations or other such nonsense. This type of reference is madness. The Plaintiff is able to state that if she had never met the Defendant she would not experience such control. The Plaintiff, then, request of the court to request of the Defendant to accept without any further interference that the Plaintiff is not interested in participating in any form of superstition, false prophecies, unapproved supernatural events, or EWTN, or the P.C.P.A. of Alabama of which the Defendant is a long-time member. The Plaintiff does not find verbal or emotional abuse appropriate. The amount for the damages is, in the esteem of the Plaintiff, a very low figure for something that the Plaintiff is not of any necessity whatsoever about which to be concerned in any way, in either her civil rights or her religious freedoms.

Signature,

_____

Mary R. Schaefer
5709 N. Harlem Ave., Apt.
Chicago, IL  60631

312.351.0362