MHW

**RECEIVED**
JUN - 2 2008
6-2-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Plaintiff(s)

Mary R. Schaefer

v.

Sr. Mother Angelica (Rita Rizzo), P.C.P.A.

Defendant(s)

Case No. 08CV3140
JUDGE GOTTSCHALL

**AMENDED COMPLAINT**

EXHIBIT A        (2 copies for Complaint)
STATUTE #        (Civil Cover Sheet, VI)
$350,000.00      (Civil Cover Sheet, VII)
DEMAND AMT.

(EXHIBIT A)

CONFIDENTIAL                                           September 1, 2007


M. Mary Angelica
Current Abbess/Superior
Poor Clares of Perpetual Adoration
Our Lady of the Angels Monastery
Old Leeds Road or New Address
Birmingham, AL


Dear Religious Superior:

I dislike greatly having to send another letter and specifically to you regarding my religious life, status, and identity.

On December 7, 1990, if I have the date correctly as the Office for Religious in the Diocese of Birmingham should be able to verify, I entered the Poor Clares of Perpetual Adoration as a postulant at Our Lady of the Angels Monastery, Old Leeds Road, Birmingham, AL.

After the first year of postulancy ended, I was invested and became a novice.
I must add before continuing that at this time of religious life formation as approved by the constitutions and the local ordinary, I received a religious name, Sr. Sarah of the Merciful Redeemer. This was my religious name when I completed novitiate and when I made my first profession of vows. Bishop Boland was the local ordinary at that time.

During the second year of my temporary vows, following one year of postulancy, two years of novitiate, and one year as a temporarily professed religious, I left the community of the Poor Clares of Perpetual Adoration in good standing.

Upon leaving the community, I entered a canonical period of time wherein I was still under my vows and was continuing to seek whether or not the vocation call would lead me to a transfer of my religious vows prior to the end of the canonical year. At the suggestion of Mother Angelica and Sr. Mary Raphael, I visited a religious congregation in Pennsylvania dedicated to the Sacred Heart whose superior at that time was/is Mother Amabilis [please excuse if the spelling is incorrect]. At the end of the visit, Mother Amabilis spoke with me and said she accepted me and told me I could enter and join that religious congregation; however, I did not transfer my religious vows to that order of consecrated religious at that time.

At the end of that canonical year, my religious vows terminated and I was officially no longer a Poor Clare of Perpetual Adoration. **Please be assured that as a former member of the Poor Clares of Perpetual Adoration, I wish no association in any way, nor identification with, the Poor Clares of Perpetual Adoration** which monastery is located in the State of Alabama, formerly in Irondale, AL.

In addition, please understand dear Mother Angelica that I am not in anyway associated with the Missionaries of the Eternal Word or any other community there, new or existing, nor am I associated with the TV station known as EWTN, located at Our Lady of the Angels Monastery or somewhere nearby there in AL, nor am I associated with any individual or group of lay people, such as an apostolate, associated in any way to EWTN, the Poor Clares of Perpetual Adoration, "Medugorje," or any center/group of any kind identified with EWTN, the Poor Clares of Perpetual Adoration, the Missionaries of the Eternal Word, and/or Medugorje. Please, I must be specific here. I also am not in anyway whatsoever associated with any extern identity or extern sister of the Poor Clares of Perpetual Adoration.

Thus, in sum, I am not associated nor interested in being in anyway associated or identified with any specific group, center, or individual who operates as or for "Medugorje," EWTN, or "the Monastery," either through pilgrimages, book apostolates, or holy souls apostolates. Specifically, I need to mention I am not associated nor interested in being associated in any way with any individuals, businesses, or groups associated in any way with EWTN or Medugorje in Chicago, specifically G. Murphy, S. Tassone, and K. Long. It is completely unnecessary to be identified with these in order to be Catholic and this practice of my Catholic faith, I might add, is a constitutional right of my freedom of worship. There is nothing in the practice of my faith that requires in anyway an association with the Poor Clares of Perpetual Adoration, EWTN, any community or any group of any kind so associated.

It seems to me you became aware of my employment in Chicago and decided to interfere through some individuals closely associated with you with whom I have no relationship whatsoever nor interest. *Please do not do this again.*

**Please take note of the following five points, please:**

1) I am very concerned that the P.C.P.A. have been seeking to cause me harm, in my employment or my vocation, my family or other relationships, including physical and moral harm.

2) I am very concerned attempts have already been made to use or to identify myself, my previous memory and identity as a religious, including my name and title, by the above cited and the P.C.P.A., or any of my identity prior to and after my life as a P.C.P.A.

Please be aware I have given no permissions of any kind whatsoever, either as a citizen or a member of the Catholic Church, for the use of my identity to be used for any televised program, audio tape, book publishing venture or apostolate of any kind, by either associated individuals or

groups or the P.C.P.A., M.E.W., or EWTN; or for the use of the sale of any Eucharistic pin spoken about by myself during a televised broadcast at the time the P.C.P.A. changed to a different habit during the first or second year of my religious vows. Thus, please do not use my identity in any way or for any means of capital gain, financial profit, or sale, for either "the Monasteries" or the television station, especially given that there is no permission or copyright and that no profits made have been provided to me. These and such uses I must ask to be prohibited, therefore, especially as it not only infringes on my religious life identity, but I have neither been notified of any such endeavor nor have granted any such legal permission.

My personal identity includes anything I have written, any gift left at the monastery such as a book or recipes, any current or previous employer relationships, such as the work I did professionally for years as an Editor and Manager and freelance writer, my studies in Mass Communications or Theology, and the work I did and have done as a teacher for the Archdiocese of Chicago, and not for the P.C.P.A. or "Medugorje" or EWTN and certainly not as a P.C.P.A. Can you figure it out theologically, please? This would be wrong to be associated with the P.C.P.A.s as I am no longer a member and have no canonical rights in that community. What a problem. Let us face it. I still do have canonical rights, but I am not a member of your community, thus it is impossible for me to be associated. Can you understand?

My identity also must include **any writing or proofreading** completed before, after, or during my time at the monastery, including any letters, newsletters, or preparing of constitutions; my work I prohibit to be used, appropriated, or re-done without my own permission. I cannot explain this to you. I have my own intentions. As your change, I must insist that my identity is my own - figure that out - not yours! Is that clear that another human being's identity is not your identity?

So, you cannot use my identity or any of my memory, per se, for any purpose whatsoever, especially without my permission or without my even having been notified. This also and especially must include my identity as a religious; that is, any prayers I said during my time as a Poor Clare of Perpetual Adoration, such as those specified in the rule, Adoration and the Divine Office, the attending of the Eucharist, my spiritual reading, my charges, and the daily prayers I said as my own personal devotion: the Divine Mercy and the Stations of the Cross said each day. Mother Angelica knows full well about these prayers, as she was the Superior at that time. We discussed this in more formal moments such as spiritual direction.

In addition, this includes any other work whatsoever, including opening of mail, answering of mail, use of technology, development of the library, planting of the garden, answering of the telephone, and answering the door, the economy, cooking, and whatever other work was completed. These charges as you well know were not the work of another sister. I cannot explain that to you anymore.

**3) Any charism given to me from God that developed as part of my own identity during my time as a religious, and my times of prayer before and after my life in religion, remain with me, and are not part of the religious community nor anyone else associated with them.** It is not possible to appropriate my title or graces coming from God to me to somebody else to use. This is the problem.

In conclusion, any use of my identity, and especially thus for financial profit or for developing of the monastery or the apostolates is not allowed. Let it please be understood that I am not a member of the Poor Clares of Perpetual Adoration anymore. *It is very normal that when a women religious leave a convent, she cannot live her life with or for the community she leaves - she is no longer a member of the community.*
She cannot continue her life with such, whether they are friends or not. Theologically speaking, it is not normal to stay associated. It is simply not possible. But such appropriation of one's very identity is so completely out of line, it seems quite irreligious; whether you like someone or not, you cannot do something sinful against them.

**4) I am very concerned about the personal damages to myself at this point in time as well as to my family and any friendship or acquaintance, especially and even physical and emotional trauma. Have you ever considered the effect of scandal on a human being, an innocent child or adult?** *I do not like to mention that at times I feel as if I am coerced or threatened by M. Angelica and/or the P.C.P.A.; as if, one must be involved in EWTN or else one is not Catholic! There is no such truth.*

These threats violate, I repeat, violate, my civil and religious liberties. I have done nor did anything wrong to the community or M. Angelica; I was living my life very peacefully, working in a Catholic School, studying Theology for my second M.A., working in the areas of ministry and catechesis and was not interested in M. Angelica, the P.C.P.A., nor any of the above listed. I was not thinking of them. I was continuing my life according as I discerned was best for my own identity and sense of vocation. Why do you have people in the city of Chicago harass me and my family? You must advise them to stop and to stop using my identity.

Any direct or indirect serious slander or calumny against myself or my family or any related perception or definition of my name in religion as "Sarah" as a "Jew," with an antisemitical flavor that probably *astonishes* all of the true and everlasting heavens, I find quite serious. M. Angelica and M. Margaret Mary know full well the accusation began while I was living at that monastery - as kind of a game - Sarah isn't a saints name, Sarah is a Jew. Please, your games must stop. I simply am not interested in EWTN, P.C.P.A., and the above listed. I had forgotten such silliness. I am no longer a member there nor are you in charge of my spiritual life.

**5) In all, please know for certain my religious life and identity is not to be used or associated in any way with the heard of prophecies from the Mother of God, alleged supernatural events unapproved such as Medugorje (as cited above - the relationship between certain groups or individuals and EWTN and the monasteries), any TV station program or/and about Medugorje, a certain Fr. Jozo who visited the monastery prior to my leaving and with whom I do not have any association or interest, nor any alleged "motherly blessing."**

*Please note that the above content has been as specific as possible all with one, single point:* **I am no longer since the year my vows terminated a member or in any way associated with the Poor Clares of Perpetual Adoration or any related apostolate or community.** *Why does*

this need to be explained? Please Mother Angelica, I am not interested in your work and that is neither a sin nor does it keep me from practicing my Catholic faith in any way. Please recognize that there is no authority, no superiorship, no link whatsoever in my life between you and me and the P.C.P.A. All I am asking, then, is to please, "let go," and please advise your associates in Chicago to please no longer interfere in my life or use any of my identity.

Thank you.

Sincerely,

Mary R. Schaefer
Formerly Sr. Sarah of the Merciful Redeemer


cc:  Office for Religious: Archdiocese of Chicago, IL
        Diocese of Birmingham, AL

---

Date:    Sat, 1 Sep 2007 11:30:28 -0700 (PDT)

From:    "Mary Schaefer" <mrswriting@yahoo.com>

Subject: CONFIDENTIAL

To:      contact@nunsgiftshop.com, fmuscolino@bhmdiocese.org, jmcglinchey@archchicago.org


*Mary R. Schaefer*
*June 2, 2008*

Illinois Compiled Statutes

# PROPERTY
## (765 ILCS 1075/) Right of Publicity Act.

(765 ILCS 1075/1)
Sec. 1. Short title. This Act may be cited as the Right of Publicity Act.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/5)
Sec. 5. Definitions. As used in this Act:
"Commercial purpose" means the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising.
"Identity" means any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice.
"Individual" means a living or deceased natural person, regardless of whether the identity of that individual has been used for a commercial purpose during the individual's lifetime.
"Juristic person" means a partnership, trust, estate, corporation, unincorporated association, or other organization capable of suing and being sued in a court of law.
"Name" means the actual name or other name by which an individual is known that is intended to identify that individual.
"Person" means a natural or juristic person.
"Work of Fine Art" means (i) a visual rendition including, but not limited to, a painting, drawing, sculpture, mosaic, videotape, or photograph; (ii) a work of calligraphy; (iii) a work of graphic art including, but not limited to, an etching, lithograph, serigraph, or offset print; (iv) a craft work in materials including, but not limited to, clay, textile, fiber, wood, metal, plastic, or glass; or (v) a work in mixed media including, but not limited to, a collage, assemblage, or work consisting of any combination of items (i) through (iv).
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/10)
Sec. 10. Recognition of right of publicity. The right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/15)
Sec. 15. Transferability, descendability, and divisibility. The rights under this Act are property rights

that are freely transferable in whole or in part to any person either by written transfer, including but not limited to wills and trusts, or by intestate succession only to an individual's spouse, parents, children, and grandchildren, except that the rights under this Act are not subject to levy or attachment and may not be the subject of a security interest. Nothing in this Section limits the ability of any party to levy, attach, or obtain a security interest in the proceeds of the rights under this Act or the proceeds of the exercise of those rights.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/20)
Sec. 20. Enforcement of rights and remedies.
(a) The rights and remedies set forth in this Act may be exercised and enforced by:
    (1) an individual or his or her authorized representative;
    (2) a person to whom the recognized rights have been transferred by written transfer under Section 15 of this Act; or
    (3) after the death of an individual who has not transferred the recognized rights by written transfer under this Act, any person or persons who possesses an interest in those rights.
(b) Each person described in paragraph (3) of subsection (a) shall make a proportional accounting to, and shall act at all times in good faith with respect to, any other person in whom the rights being enforced have vested.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/25)
Sec. 25. Termination of rights of deceased individual. The rights set forth in this Act terminate if:
    (a) a deceased individual has not transferred his or her rights in writing under Section 15 of this Act; and
    (b) the individual has no living spouse, parents, children, or grandchildren.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/30)
Sec. 30. Limitations regarding use of an individual's identity.
(a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative.
(b) If an individual's death occurs after the effective date of this Act, a person may not use that individual's identity for commercial purposes for 50 years after the date of the individual's death without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/35)
Sec. 35. Applicability.

   (a) This Act applies to acts or events that take place after the effective date of this Act.
   (b) This Act does not apply to the following:
      (1) use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services;
      (2) use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign;
      (3) use of an individual's name in truthfully identifying the person as the author of a particular work or program or the performer in a particular performance;
      (4) promotional materials, advertisements, or commercial announcements for a use described under paragraph (1), (2), or (3) of this subsection; or
      (5) use of photographs, videotapes, and images by a person, firm, or corporation practicing the profession of photography ("professional photographer") to exhibit in or about the professional photographer's place of business or portfolio, specimens of the professional photographer's work, unless the exhibition is continued by the professional photographer after written notice objecting to the exhibition has been given by the individual portrayed.
(Source: P.A. 90-747, eff. 1-1-99.)


   (765 ILCS 1075/40)
   Sec. 40. Violations; monetary relief.
   (a) A person who violates Section 30 of this Act may be liable for either of the following, whichever is greater:
      (1) actual damages, profits derived from the unauthorized use, or both; or
      (2) $1,000.
   (b) Punitive damages may be awarded against a person found to have willfully violated Section 30 of this Act.
(Source: P.A. 90-747, eff. 1-1-99.)


   (765 ILCS 1075/45)
   Sec. 45. Establishment of profits. In establishing profits under paragraph (1) of subsection (a) of Section 40 of this Act:
      (a) the plaintiff is required to prove the damages or gross revenue attributable to the unauthorized use; and
      (b) the defendant is required to prove properly deductible expenses.
(Source: P.A. 90-747, eff. 1-1-99.)


   (765 ILCS 1075/50)
   Sec. 50. Injunctive relief. Upon a showing of cause as required by Article XI of the Code of Civil Procedure for the issuance of injunctive relief, the court may issue such

temporary restraining orders, preliminary injunctions, and permanent injunctions as may be appropriate under this Act.

(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/55)
Sec. 55. Attorney's fees; costs. The court may award to the prevailing party reasonable attorney's fees, costs, and expenses relating to an action under this Act.

(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/60)
Sec. 60. Rights and remedies. The rights and remedies provided for in this Act are meant to supplant those available under the common law as of the effective date of this Act, but do not affect an individual's common law rights as they existed before the effective date of this Act. Except for the common law right of publicity, the rights and remedies provided under this Act are supplemental to any other rights and remedies provided by law including, but not limited to, the common law right of privacy.

(Source: P.A. 90-747, eff. 1-1-99.)

Top